MARY J. MILLER, Plaintiff-Appellant, v. PINNACLE DOOR COMPANY, INC., d/b/a Central Illinois Door, Respondent-Appellee.

Fourth District   No. 4—98—0183

Argued October 20, 1998.—Opinion filed November 25, 1998.—Rehearing denied December 28, 1998.

258

GARMAN, P.J., dissenting.

James P. Ginzkey (argued), of Hayes, Hammer, Miles, Cox & Ginzkey, of Bloomington, for appellant.

John Casey Costigan (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On or about March 20, 1995, defendant Pinnacle Door Company (Pinnacle) installed a remote-control garage door opener at the residential garage of plaintiff Mary Miller and her husband, Glen. On June 22, 1995, Mary was injured when operating an emergency release cord on the garage door opener. On March 26, 1996, Mary filed a complaint against Pinnacle, alleging, *inter alia*, Pinnacle was negligent in installing the release cord. In September 1997, on the second day of trial, and prior to plaintiff resting her case in chief, Pinnacle was granted leave to amend its pleadings to assert a contributory negligence defense. The jury returned a verdict finding Pinnacle liable but Mary 50% contributorily negligent. Mary appeals, arguing the trial court erred by allowing Pinnacle to amend its pleadings and by allowing Mike Hillard, one of Pinnacle's owners, to testify about problems with other garage door openers. We affirm.

The parties are aware of the facts and the testimony will not be reviewed in detail.

In March 1995, Daniel VanNote, an employee of Pinnacle, came to Mary's home to install a remote-control garage door opener produced by Allister Manufacturing Company, Inc. (Allister). The opener was attached to the ceiling near the front and center of the garage, which

Mary described at trial as larger than a typical two-car garage. A red handle attached to a cord hanging beneath the opener operates the emergency release lever.

A tag attached to the opener reads:

"IF THE DOOR BECOMES OBSTRUCTED, DETACH DOOR FROM OPERATOR BY PULLING RED HANDLE DOWN SHARPLY. TO REENGAGE THE OPERATOR PULL RED HANDLE TOWARD DOOR OPENING."

On June 22, 1995, the garage door would not go back down after Glen left for work. Mary went out into the garage and pulled the emergency release rope, but the opener did not respond. She pulled the rope again and it came loose from the release lever, causing Mary to fall on her left side and injure her left wrist. According to Mary's deposition testimony, taken on November 15, 1996, when she fell she "flew" across the garage, into the corner.

On March 26, 1996, Mary filed a complaint against Pinnacle for injuries incurred from her fall. According to a case management order entered on June 25, 1996, Pinnacle had until December 1, 1996, to disclose its opinion witnesses. Pinnacle did not notify Mary of any opinion witnesses prior to trial.

On September 9, 1997, Mary filed a notice pursuant to Supreme Court Rule 214 (166 Ill. 2d R. 214) requesting any and all documents reflecting complaints about the installation of garage door openers. Pinnacle moved to quash this notice, arguing the materials it sought were irrelevant and Mary was using it improperly as a late discovery tool. The trial court granted the motion to quash the notice. On September 10, 1997, the first day of trial, the trial court granted Pinnacle's motion *in limine* to exclude evidence relating to other garage door openers because this evidence was irrelevant. In opening statement, Pinnacle's counsel referred to problems with other garage door openers, not attributable to Pinnacle, due to moisture collecting in the electronic eyes. Because Pinnacle had not disclosed any evidence or opinion testimony on this point, Mary filed a motion *in limine* to exclude any such evidence. This motion was denied.

Mary, Glen, and VanNote testified as Mary presented her case. Both Mary and Glen testified as to the problems they had had with the opener prior to the accident. Mary testified that she flew across the garage once the cord came loose, but she denied she fell into the corner of the garage until confronted on cross-examination with her deposition statement. Then Mary merely admitted that she had stated otherwise in her deposition.

VanNote testified that when he attached the cord to the release lever, he did not use a double knot as instructed by the installation

manual. He testified he did not know what a double knot was, and he did not recall if he was ever told to use one. VanNote testified he was never given any classroom training on installing garage doors.

Mary also called as a witness Mike Allen, an installer of garage door openers who also wrote a technical text on them. Allen had inspected the opener after it was removed and found the defect, an unscrewed sensitivity screw, which kept the door from closing. Allen testified he always uses a double knot when attaching an emergency pull cord. Allen testified it was improper to use a single knot, because it would simply slip through the grommet of the release lever, allowing the handle to come loose.

On the second day of trial, the trial court allowed Pinnacle to amend its answer to allege, for the first time, Mary was contributorily negligent in operating the release cord. The trial court concluded the amendment was timely because it arose from Mary's own testimony on the first day of trial that she "flew" across the garage when the handle came loose.

Hillard testified that in 1994 and 1995 there was a problem with the electronic eyes of other Allister door openers caused by moisture. The trial court overruled the objection of Mary's counsel that the testimony lacked foundation. Hillard testified moisture in the electronic eye of openers was an industry-wide problem, and he had been given a notice by Allister regarding it.

On the issue of damages, Mary testified she was no longer able to unscrew a lid from a jar, lift a pan, or use a computer keyboard. Glen testified Mary was unable to provide as much help in his construction business as she had before, because she could no longer drive a supply van that did not have power steering, and she could no longer handle the bungee cords used to secure items to a supply truck. Medical evidence was also presented by the parties.

After a two-day trial, the jury found Pinnacle liable for $4,587.67. This represented $1,087.67 in medical expenses, $2,500 for pain and suffering, and $1,000 for disability. Because the jury found Mary 50% contributorily negligent, her award was reduced to $2,293.84.

On September 24, 1997, Mary filed a posttrial motion arguing the jury's decision was against the manifest weight of the evidence, and the trial court erred by allowing Pinnacle to amend its pleadings during trial to raise the contributory negligence defense and allowing Hillard to testify as to problems with other garage door openers. Mary argued, *inter alia*, that Hillard's testimony was perjured. She submitted the affidavit of Robert Holland, president and chief executive officer of Allister from 1993 through 1996, wherein he stated the company had not received complaints regarding the electronic eye of

the system, and Allister had never sent notices to retailers or dealers about malfunctions occurring when the electronic eye got wet. On February 19, 1998, the trial court denied this posttrial motion.

■ Mary argues the trial court erred by allowing Pinnacle to amend its pleadings raising the issue of contributory negligence. A pleading may be amended at any time before final judgment, on just and reasonable terms. 735 ILCS 5/2—616(a) (West 1996). Because a trial court has broad discretion in motions to amend pleadings prior to entry of final judgment, it will not be reversed unless there has been a manifest abuse of discretion. *Loyola Academy v. S&S Roofing Maintenance, Inc.*, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216 (1992). We find no abuse of discretion here.

■ In determining whether to allow amendment, a trial court is to consider whether (1) the proposed amendment would cure the defective pleading, (2) previous opportunities to amend the pleading could be identified, (3) other parties would sustain prejudice or surprise by virtue of the amendment, and (4) the proposed amendment is timely. *Loyola*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16; *Zook v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 157, 169, 642 N.E.2d 1348, 1357 (1994).

■ The most important of the *Loyola* factors is the prejudice to the opposing party, and substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant. See, *e.g.*, *Cuengros v. Liquid Carbonic Corp.*, 99 Ill. App. 3d 376, 379, 425 N.E.2d 1050, 1053 (1981). For a delay to prejudice a party, it must operate to hinder his ability to present his case on the merits. *Banks v. United Insurance Co. of America*, 28 Ill. App. 3d 60, 64, 328 N.E.2d 167, 171 (1975). Prejudice may be shown where delay before seeking an amendment leaves a party unprepared to respond to a new theory at trial. *Farnor v. Irmco Corp.*, 73 Ill. App. 3d 851, 858, 392 N.E.2d 591, 597 (1979).

■ When the parties know of the facts giving rise to an affirmative defense prior to trial, and the trial court can reasonably conclude the defense, though not raised in the pleadings, was part of the case *ab initio*, it may allow the pleadings to be raised by amendment, even after the plaintiff has presented his case. *Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 784, 614 N.E.2d 436, 443 (1993). At the posttrial motion hearing, the trial court concluded plaintiff was not surprised by the amendment because it was her conduct and testimony that gave rise to the contributory negligence defense. We agree. Mary's testimony on direct examination was that when the cord came loose, she "flew backwards" "into the corner" of the garage. She also testified that the force necessary to pull the cord was similar to lowering or raising a

curtain and that she did not jerk on the rope. It is difficult to see how the parties would not foresee this defense on the facts presented.

To the extent that *Carlisle v. Harp*, 200 Ill. App. 3d 908, 558 N.E.2d 318 (1990), a fifth district case, stands for an absolute rule that denial of proximate cause can never give the plaintiff notice of a contributory negligence defense, we decline to follow this case here. In this case, the injury could only have occurred due to the negligent installation of the release lever or plaintiff's conduct in pulling it. The defendant's denial that its conduct was the proximate cause of injury necessarily put the plaintiff on notice her conduct would be at issue.

Plaintiff's argument that she was prejudiced because she had already presented her witnesses and was deprived of the opportunity to cross-examine them on the force necessary to operate the garage door opener is without merit. Evidence of the force necessary to operate the manual release was presented in her case in chief the first day and prior to resting her case. It is true that defendant later presented evidence that the pressure needed to release the hook is "two pounds maximum." However, as noted heretofore, plaintiff testified on cross-examination that she "did not" yank the rope, but used the same force necessary to raise or lower a curtain. She did not ask to recall her witnesses on this point.

■ Mary next argues Hillard should not have been allowed to give an opinion as to problems with the electronic eye mechanism on other garage door openers. Mary now raises several objections to this testimony; however, the only objection to Hillard's testimony at trial was "[o]bjection foundation." We agree with the defendant that Hillard's testimony was factual, not opinion. We also note that the testimony of Hillard and the posttrial affidavit of Holland do not establish perjury.

However, we do not decide whether Hillard's testimony was admissible or whether Mary waived these arguments because Mary failed to establish Hillard's testimony would have materially affected the outcome. See *Pagel v. Yates*, 128 Ill. App. 3d 897, 900-01, 471 N.E.2d 946, 950 (1984); *Herington v. Smith*, 138 Ill. App. 3d 28, 31, 485 N.E.2d 500, 502 (1985). Mary argues Hillard's testimony could have established the manufacturer, not Pinnacle, was responsible for Mary's injury.

However, Hillard's testimony as to the lens and moisture is harmless. Glen Miller, plaintiff's husband, testified that he went to defendant's place of business concerning the malfunction of the opener and was told that moisture in the electric eye "would keep it from going down." Hillard's testimony would establish, at most, that Allister's negligent design or production of the opener caused the door to

stick. How or why the garage door became stuck has no legal bearing on Pinnacle's negligence in installing a release lever that is only to be used once the door becomes stuck. *Cf. Benner v. Bell*, 236 Ill. App. 3d 761, 767, 602 N.E.2d 896, 900 (1992).

The jury ruled in Mary's favor on the issue of liability. We reject Mary's argument the testimony may have harmed her by causing the jury to enter a compromise verdict by reducing her damages. Where the evidence is sufficient to support the verdict, we will not speculate that the jury improperly entered a compromise verdict. See *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 755, 643 N.E.2d 245, 254-55 (1994). Rather, the record must include some positive indication of a compromise. *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 940-41, 631 N.E.2d 1269, 1281 (1994). To indicate a compromise verdict, the damages must not simply be against the manifest weight of the evidence (*Paul Harris Furniture Co. v. Morse*, 10 Ill. 2d 28, 46-47, 139 N.E.2d 275, 286 (1956)), but must bear no reasonable relationship to the evidence (*Taylor v. Manhattan Township Park District*, 138 Ill. App. 3d 23, 27, 485 N.E.2d 399, 403 (1985); *Svetanoff v. Kramer*, 80 Ill. App. 3d 575, 578-79, 400 N.E.2d 1, 3 (1979)). The medical evidence in this case was conflicting, and the jury could easily have believed the testimony that Mary's current problems were due primarily to her own failure to pursue physical therapy aggressively. The evidence here was also sufficient to support the trial court's finding of comparative negligence.

For all of the above reasons, we affirm.

Affirmed.

COOK, J., concurs.

PRESIDING JUSTICE GARMAN, dissenting:

The trial court abused its discretion in allowing Pinnacle to amend its answer to raise the affirmative defense of contributory fault on the second day of trial after plaintiff had presented the great majority of her case.

While pleadings may be amended at any time prior to final judgment (735 ILCS 5/2—616(a) (West 1996)), a trial court, in the exercise of its discretion, is to consider whether (1) the proposed amendment would cure the defective pleading; (2) previous opportunities to amend the pleading could be identified; (3) other parties would sustain prejudice or surprise by virtue of the amendment; and (4) the proposed amendment is timely. *Loyola*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16; *Zook*, 268 Ill. App. 3d at 169, 642 N.E.2d at 1357. Here, the motion

caused surprise and prejudice and was untimely. The civil rules of discovery are structured to avoid last-minute surprises.

Pinnacle knew of plaintiff's testimony that she flew across the garage from the time it took her deposition 10 months prior to trial. Her trial testimony was similar. The defendant has supplied no reason for the delay in the amendment, except to say the amendment conformed the pleadings to the proof. Once trial has begun, the court ordinarily should not permit an amendment that raises new matters previously known to the pleader if no excuse is offered to explain the failure to assert them earlier. *State Farm Fire & Casualty Co. v. M. Walter Roofing Co.*, 271 Ill. App. 3d 42, 49, 648 N.E.2d 254, 259 (1995).

Since the advent of comparative negligence, the plaintiff no longer has the burden of pleading and proving freedom from contributory negligence. *Little v. Economy Preferred Insurance Co.*, 286 Ill. App. 3d 372, 376, 675 N.E.2d 1048, 1051 (1997) (Maag, J., specially concurring). The defense must raise comparative negligence by affirmative defense to make it an issue. As this court has noted:

> "[T]he failure to plead an affirmative defense, which would likely take the opposite party by surprise, waives the asserted defense. [Citations.] It cannot be considered even if the evidence suggests the existence of such a defense." *Blackburn v. Johnson*, 187 Ill. App. 3d 557, 565, 543 N.E.2d 583, 588 (1989).

In *Blackburn*, the defendant did not plead or raise the issue of comparative negligence until the jury instruction conference, and the trial court properly refused to give the requested instruction. Here, the plaintiff prepared for trial and prepared her witnesses not knowing that any issue with regard to her negligence would be raised. The majority concludes that the plaintiff should have known her own conduct would be an issue in the case. I disagree. I would follow *Carlisle*, 200 Ill. App. 3d 908, 558 N.E.2d 318. Plaintiff was placed at substantial disadvantage by defendant's springing this new theory on her halfway through the trial.

I would reverse and remand for a new trial.