SIXTH DIVISION
March 30, 2007

No. 1-06-1901

| | | |
|---|---|---|
| LAZERRIC HARTZOG and ANGELA HARTZOG, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County, Illinois. |
| v. | ) ) | No. 04 M4 1971 |
| BRUNILDA MARTINEZ, | ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | Cheryl D. Ingram Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiffs, Lazerric and Angela Hartzog, brought suit against their landlord, Brunilda Martinez, alleging that Lazerric was injured when he slipped and fell on the back stairs of their apartment, which Martinez had negligently allowed to accumulate water. The circuit court granted Martinez's motion for summary judgment and plaintiffs filed a motion to reconsider and requested leave to file an amended complaint to allege that Lazerric's slip and fall was additionally caused by Martinez's negligence in failing to properly light the stairwell. The circuit court denied plaintiffs' motions. They now appeal only the circuit court's denial of their request to file an amended complaint. For the reasons that follow, we affirm.

## I. BACKGROUND

Plaintiffs' complaint, filed October 19, 2004, alleged that husband and wife, Lazerric and Angela Hartzog, were tenants in an apartment building owned by Martinez. On October 19,

2002, Lazerric was descending the rear exterior steps of the apartment to dispose of garbage in the rear of the building when he fell and sustained injuries. The complaint further alleged that the cause of Lazerric's fall was that Martinez had allowed water to accumulate in an unnatural manner at the base of the steps and that other tenants of the building had tracked the water onto the steps, making them slippery. Plaintiffs sought compensation for Lazerric's injuries as well as for Angela's loss of the care, comfort, society, consortium and services of her husband.

On May 11, 2005, Martinez filed an answer in which she denied any negligence. She further alleged that Lazerric failed to exercise reasonable care in descending the steps. On August 16, 2005, the circuit court ordered that discovery be completed by September 13, 2005, that depositions of the parties be completed by October 11, 2005, and that the matter be continued to October 19, 2005, for status.

On October 6, 2005, Lazerric's deposition was taken. With regard to the day of his fall, Lazerric testified that at about 8:30 to 9 p.m. that evening, he exited the rear door of his apartment to take out the trash. He said he was holding the garbage bag with his right hand and holding onto the stairway railing with his left hand. Lazerric described the stairs as consisting of six or seven steps per landing. He said he made it down the first two steps and then slipped and fell the rest of the way down. The following colloquy then took place between Lazerric and defendant's counsel:

"Q. What happened that caused you to fall?

A. It was wet. It's the moisture, the wood and everything from when it

rained or whatever. There's puddles always down at the bottom. And I don't

know if that moisture comes up or whatever, but it's always wet and moist.

\*\*\*

Q. Do you know how the stairs became wet and moist?

A. It rained. \*\*\*

Q. When you fell, the stairs were still wet from the rain?

A. Yes.

Q. From the day before?

A. Right.

\*\*\*

Q. Was there anything else other than the rain water on the stairs that you believe caused you to fall?

A. No."

Later in the deposition, Lazerric testified regarding the lighting in the stairways:

Q. How did you feel after you fell down the stairs?

A. I was pissed off in a way.  Attitude, pissed off.  My body, my butt was sore.

Q. It was sore once you had fallen?

A. Yes.

Q. What were you upset about?

A. I mean because of the fact that it's always like that.  The light is out in the back

\*\*\*."

Lazerric also stated that at the time of his fall the lights on the back porch had been out for about

two weeks.

Near the end of the deposition, Lazerric again testified about the lighting:

"Q: Prior to falling down the stairs, sir, did you notice that the stairs were wet?

A: It was dark. Couldn't see a thing. I was feeling my way.

Q: When did you first notice that the stairs were wet then?

A: When I hit the bottom. When I hit – when I fell.

*** When I was sliding down – when I landed and everything, my clothes was wet. My buttocks area and part of my legs. It was moist. It was wet on me."

Finally, Lazerric testified that he was serving in the army in Iraq from January of 2003 (approximately two months after his fall) until June of 2004. Plaintiffs' attorney waived the right to examine Lazerric.

On December 7, 2005, Martinez filed a motion for summary judgment in which she argued that Lazerric's fall was caused by a natural accumulation of rainwater in no way attributable to her negligence. She further argued that Angela's claims must also be dismissed because they were derivative her husband's claim.

On January 5, 2006, plaintiffs filed a response to Martinez's motion for summary judgement in which they argued that the accumulation of water on the rear steps was, in fact, unnatural, and could, therefore, be attributed to Martinez's negligence. Plaintiffs further sought to amend their complaint to allege that "puddles of water would form at the rear staircase each and every time a tenant used the washing machine on the premises and that the water would form

since the sewer was in very poor condition and could not allow sufficient drainage." Plaintiffs' response to Martinez's motion for summary judgment did not refer in any way to the lighting of the staircase on the date of Lazerric's fall.

On February 8, 2006, the circuit court granted Martinez's motion for summary judgment, finding that there was "no genuine issue of material fact that the plaintiff, Lazerric Hartzog, slipped and fell due to a natural accumulation of rain water." The order further stated: "the case is dismissed with prejudice, in its entirety, which includes Count I for negligence and Count II for loss of consortium. This is a final and appealable order." On March 10, 2006, plaintiffs filed a motion to reconsider and a motion for leave to amend their complaint pursuant to section 2-2005(g) of the Code of Civil Procedure (735 ILCS 5/2-1005(g) (West 2004)). With regard to the motion to reconsider, plaintiffs contended that whether the water on the rear steps of the Hartzogs' apartment was a natural or unnatural accumulation was a question of fact not subject to summary judgment. They further requested leave to amend their complaint to allege that Martinez was negligent for failing to properly light the rear staircase. On June 7, 2006, the circuit court denied both of plaintiffs' motions with prejudice.

On appeal, plaintiffs contend that the circuit court erred in denying their motion for leave to amend the complaint. They contend that their proposed amendment would cure any previous defect in their complaint and create a genuine issue of material fact. They further contend that Martinez would not be prejudiced by the amendment because, prior to his fall, Lazerric had complained to her about the lack of lighting on the rear staircase. Plaintiffs also deny that their request to amend was untimely or that they should have brought it earlier. Plaintiffs have

expressly waived any appeal of the circuit court's entry of summary judgment or its denial of their motion to reconsider.

In support of the orders below, Martinez first contends that plaintiffs waived their right to claim that inadequate lighting contributed to Lazerric's fall because they knew of the condition prior to filing their original complaint yet failed to raise it until after the court had granted Martinez summary judgment. Martinez next contends that, although not argued below, plaintiffs' claim regarding inadequate lighting is barred by the statute of limitations. Next, Martinez contends that considering the factors involved in determining whether an amendment should be allowed, the circuit court acted properly. Finally, Martinez contends that even if plaintiffs were allowed to amend, they would not ultimately prevail because Lazerric admitted in his deposition that the only cause of his fall was the wetness of the steps.

## II. ANALYSIS

We first address Martinez's contention that plaintiffs' proposed amendment was barred by the two-year statute of limitations applicable to personal injury lawsuits (see 735 ILCS 5/13-202 (West 2004)) because plaintiffs' attempted amendment, filed more than two years after the cause of action arose, did not relate back to the original, timely filed complaint. In support of this contention, Martinez cites Doherty v. Cummins-Allison Corp., 256 Ill. App. 3d 624, 628 N.E.2d 731 (1993), wherein the court held that an allegation of inadequate lighting did not relate back to an allegation that defendants' loading dock was in disrepair. In Doherty, the court stated:

"[W]e hold that plaintiffs' assertions against [defendant] in their amended

complaint which alleged negligence in allowing the lights to burn out set up a

cause of action growing out of a different occurrence than the allegations in the original complaint. Allowing the lights to burn out involves different conduct by different persons at different times than permitting the dock to have an excessive degree of slope or allowing it to fall into a state of disrepair. Most importantly, plaintiffs' failure to allege these acts of negligence in their initial complaint prevented defendants from discovering prior to the expiration of the statute of limitations that plaintiffs sought to recover damages caused by the alleged burned out lights. Thus, defendants had no opportunity to preserve evidence or investigate these new allegations of negligence in a timely manner." Doherty, 256 Ill. App. 3d at 633, 628 N.E.2d at 737.

Although Martinez did not raise a statute of limitations argument in the court below but raised this issue for the first time in her appellate brief, she contends that the circuit court's judgment can be defended by raising any issue supported by the record whether or not the court ruled on that issue.

In their reply brief, plaintiffs do not assert that Martinez has waived the statute of limitations argument by not raising it below. Rather, plaintiffs contend that the limitations period was tolled under the Soldiers' and Sailors' Civil Relief Act of 1940 (50 App. U.S.C. §525 (1940)) since it is undisputed that approximately two months after sustaining his injury, Lazerric, who was a sergeant in the army, was deployed to Iraq for 18 months, from January of 2003 until June of 2004. The Soldiers' and Sailors' Civil Relief Act states:

"The period of military service shall not be included in computing any period now

or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court *** by or against any person in military service ***, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service." 50 App. U.S.C. §525 (1940).

Thus, plaintiffs point out that although their cause of action initially accrued on October 19, 2002, if we toll the limitations period for the 18 months Lazerric was serving in the military, the limitations period would not end in October of 2004, but would extend until April of 2006, nearly a month after they filed their motion for leave to amend. Plaintiffs further contend that regardless of the tolling effect of the Soldiers' and Sailors' Civil Relief Act, the claim in their proposed amended complaint related back to the original complaint, which alleged that Martinez breached her duty to provide a safe means of ingress and egress to her tenants' apartments.

Putting aside whether an appellee can raise a statue of limitations defense for the first time on appeal, an issue not addressed by the appellants in this case, it would seem that, in any event, the two-year limitations period for personal injury lawsuits (see 735 ILCS 5/13-202 (West 2004)) would not act as a bar in this case due to the effect of the Soldiers' and Sailors' Civil Relief Act (50 App. U.S.C. §525 (1940)). In this regard, we note that if it were, in fact, permissible for Martinez to raise the statute of limitations defense for the first time on appeal, there could be no question that plaintiffs would then be within in their rights to invoke the Soldiers' and Sailors' Civil Relief Act for the first time in their reply brief. However, we need not rely upon the resolution of these limitations issues since, for the reasons discusses below, the

circuit court's decision to deny plaintiffs' motion for leave to amend must be affirmed regardless of whether leave to amend was sought within or outside of the period of limitations.

With respect to plaintiffs' substantive rights to amend, we first note that their motion was brought after Martinez filed a motion for summary judgment on plaintiffs' initial complaint, after plaintiffs opposed that motion, and after the circuit court ruled in favor of Martinez and dismissed the case with prejudice in its entirety. Plaintiffs' motion for leave to amend their complaint was brought pursuant to section 2-1005(g), which states: "Amendment of pleading. Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2004).

Although this section indicates that amendments may be allowed after the entry of summary judgment, there is strong argument to be made for the proposition that the right to amend following a final summary judgment should be more restricted than the right to amend prior to summary judgment or where the summary judgment is interlocutory. See Wells v. Great Atlantic & Pacific Tea Co., 171 Ill. App. 3d 1012, 1020, 525 N.E.2d 1127, 1132 (1988) ("After final judgment, the only amendments which may be allowed are ones to conform the pleadings to the proofs"). The rationale for such differentiation may well be that a party ought not be allowed to withhold his theory of a case while putting his opponent and the court to the burdens of summary judgment on an earlier pleading only to then sidestep the court's ruling by seeking to amend and start over. See In re Schwartz's Estate, 286 Ill. App. 310, 316, 2 N.E.2d 289, 291-92 (1936) ("a party may not submit a cause to the court upon one theory, and, having failed to prevail therein, seek to inject an entirely new issue into the proceeding by amendment and have

9

the cause tried over"); <u>Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.</u>, 331 Ill. App. 3d 87, 95, 771 N.E.2d 612, 619 (2002) ("It is improper practice to engage in piecemeal litigation, seeing one theory of the case to conclusion before proposing another").

Under that perspective, it would seem that the standard to be employed in determining whether a party should be allowed to amend after the entry of a final summary judgment order would be more restrictive and akin to the standard used on motions to reconsider. The purpose of motion to reconsider is to bring to the court's attention "(1) newly discovered evidence which was not available at the time of the first hearing, (2) changes in the law, or (3) error in the court's previous application of existing law." <u>Gardner v. Navistar International Transportation Corp.</u>, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991), citing <u>Kaiser v. MEPC American Properties, Inc.</u>, 164 Ill. App. 3d 978, 987, 518 N.E.2d 424, 429-30 (1987). A motion to reconsider "should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing." <u>Delgatto v. Brandon Associates, Ltd.</u>, 131 Ill. 2d 183, 195, 545 N.E.2d 689, 695 (1989).

This is consistent with the position taken by Professor Michael (see 4 R. Michael, Illinois Practice §38.7, at 238-39 (1989)) and a similarly more restrictive approach has been articulated in the appellate court decision in <u>Loyola Academy v. S & S Roof Maintenance, Inc.</u>, 198 Ill. App. 3d 799, 802, 556 N.E.2d 586, 588 (1990), *rev'd* 146 Ill. 2d 263 (1992). However, upon review, the supreme court applied the more liberal standards applicable generally to amendments brought under section 2-616(a) (735 5/2-616(a) (West 1992)). <u>Loyola Academy v. S & S Roof Maintenance, Inc.</u>, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992). However, as pointed

out in Illinois Practice (4 R. Michael, Illinois Practice §38.7 (2007 Pocket Part)), the Supreme Court in Loyola Academy found the summary judgment order in that case not to be a final order, but nevertheless did not articulate that any distinction should be drawn between nonfinal and final summary judgments for purposes of amendment (see Loyola Academy, 146 Ill. 2d at 272-74, 586 N.E.2d at 1215-16). Thus, the question still remains open as to whether we should differentiate between final and non-final summary judgments when amendments are brought pursuant to section 2-1005(g). Cf. Giacalone v. Chicago Park District, 231 Ill. App. 3d 639, 596 N.E.2d 731 (1992) (treating an amendment brought after final summary judgment pursuant to section 2-1005(g) no differently than other amendments).

In this case, the summary judgment entered in favor of Martinez was final. Thus, there can be no question that if the more restrictive standard were to apply plaintiffs would not prevail because their proposed amended complaint is not based on newly discovered material, changes in the law, or an error in the court's previous application of existing law. See Gardner, 213 Ill. App. 3d at 248, 571 N.E.2d at 1111. Moreover, plaintiffs have proffered no explanation for their failure to previously allege that inadequate lighting contributed to Lazerric's fall.

However, even in the absence of any such distinction, the result would be no different if one were to apply the general standards applicable to amendments under section 2-616(a). These standards have been enunciated in the supreme court decision in Loyola Academy. In Loyola Academy, the supreme court noted: "[s]ection 2-1005(g) 'reaffirms the power of the court to permit amendments to pleadings at any time, as mandated by section 2-616(a) of the Civil Practice Law.' [Citations.] Furthermore, since the ' "just and reasonable" terms of section 2-

No. 1-06-1901

1005(g) mirror the language used in section 2-616(a) [citation] [it] has been interpreted as requiring the trial court to permit amendment if it will further the ends of justice.' [Citation.]" Loyola Academy, 146 Ill. 2d at 273, 586 N.E.2d at 1215.

Section 2-616 of the Code of Civil Procedure provides in pertinent part:

"(a) At any time before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim fo ***

(c) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." 735 ILCS 5/2-616 (West 2004).

The Loyola court then established that when determining whether a trial court abused its discretion in ruling on a proposed amendment, courts of review must look to four factors:

"(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." Loyola Academy, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16, citing Kupianen v. Graham, 107 Ill. App. 3d 373, 377, 437 N.E.2d 774 (1982).

The court found that based on these factors, its plaintiff should have been allowed to amend.

12

Loyola Academy, 146 Ill. 2d at 273, 586 N.E.2d at 1216.

Plaintiffs contends that based on the four Loyola factors, the circuit court abused its discretion in denying their petition for leave to amend. In support of the first factor, whether the proposed amendment would cure the defective pleading, plaintiffs cite several slip-and-fall negligence cases where claims regarding water, snow, or ice failed by virtue of there being no evidence of unnatural accumulation, but additional claims regarding inadequate lighting saved plaintiffs' complaints from summary judgment. For instance, in Kittle v. Liss, 108 Ill. App. 3d 922, 439 N.E.2d 972 (1982), plaintiff slipped and fell down the icy stairs of a tavern. The court held that there was no affirmative showing that the accumulation of ice was anything other than natural and that there was, therefore, no question of fact to pose to a jury. Kittle, 108 Ill. App. 3d at 924, 439 N.E.2d at 973. However, the court held that regardless of that deficiency, a triable issue of fact existed in that there was evidence to support plaintiff's allegation that the stairs were inadequately lit in defiance of defendant's duty to provide a reasonably safe means of ingress and egress from his place of business. Kittle, 108 Ill. App. 3d at 925, 439 N.E.2d at 974. Similarly, in Weber v. Chen Enterprises, Inc., 184 Ill. App. 3d 847, 851, 540 N.E.2d 957, 960 (1989), the court held that a question of fact existed as to whether plaintiff's fall in defendant's icy parking lot was proximately caused by inadequate lighting, which could potentially be attributed to defendant, or solely by the natural accumulation of ice, which could not be attributed to defendant. See also Pollard v. University of Chicago, No. 04 C 7946 (N.D. Ill. March 14, 2006) (although the concrete bollard on defendant's plaza was an open and obvious hazard in the light of day, a question of fact existed as to whether lack of lighting at night caused the bollard to

13

become a concealed peril).

We note that, unlike in the instant case, the plaintiffs in Kittle, Weber, and Pollard all initially alleged negligence on the basis inadequate lighting in their complaints. Nevertheless, we agree with plaintiffs that, based on these cases, it is clear that had they been allowed to allege that Lazerric's fall was caused by his inability to see that the steps were wet, the complaint would not have been subject to the same summary disposition that occurred.

With regard to the next factor of prejudice, plaintiffs contend that since Martinez knew that the lights were out prior to Lazerric's fall, the proposed amended pleading did not come as a surprise and was, therefore, not prejudicial. Plaintiffs further contend that while Martinez knew of the lighting issue prior to their proposed amendment, their attorney only discovered the issue upon Lazerric's deposition. In opposition to plaintiffs' position, Martinez would contend that regardless of whether she generally knew that Lazerric had complained prior to his accident about the lights being out, she was unaware until the proposed amendment that Lazerric would claim that the lack of lighting contributed to his fall. Consequently, Martinez contends she would be prejudiced by the amendment because she had no reason to preserve evidence regarding the lighting or to investigate the new allegation.

Prejudice to the party opposing an amendment is the most important of the Loyola factors, and "substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant. Paschen Contractors, Inc. v. City of Kankakee, 353 Ill. App. 3d 628, 638, 819 N.E.2d 353, 362 (2004), citing Miller v. Pinnacle Door Co., 301 Ill. App. 3d 257, 261, 703 N.E.2d 628, 631 (1998). "Prejudice may be shown where delay before seeking an amendment

14

No. 1-06-1901

leaves a party unprepared to respond to a new theory at trial." Miller, 301 Ill. App. 3d at 261, 703 N.E.2d at 631. Although Lazerric may have complained to Martinez about lights being out prior to his fall, there was no indication prior to plaintiffs' proposed amendment that Martinez would be required to defend against such a claim and, therefore, Martinez had no reason to preserve or obtain evidence to defend the claim. Moreover, regardless of what plaintiffs' attorney knew or should have known about his client's fall prior to Lazerric's October 2005 deposition, plaintiffs' attorney chose not to depose Lazerric about the lighting, and plaintiffs did not attempt to amend their complaint after that deposition. Nor did plaintiffs attempt to amend their complaint concurrently with their January 2006 response to Martinez's motion for summary judgment. Thus, plaintiffs motion for leave to amend brought after summary judgment could certainly have taken Martinez by complete surprise.

With regard to the third and fourth Loyola factors, whether the proposed amendment was timely and whether there were previous opportunities to amend, plaintiffs contend that because no trial date had been set and because discovery had not been closed, these factors should be deemed to weigh in their favor. The stage of litigation at which a proposed amendment is brought is certainly a relevant consideration. See Loyola, 146 Ill. 2d at 275, 586 N.E.2d at 1217; Mendelson v. Ben A. Borenstein & Co., 240 Ill. App. 3d 605, 620, 608 N.E.2d 187, 196 (1992). Here, plaintiffs brought their motion to amend on March 10, 2006. Although discovery was not yet completely closed at that point, discovery as to the parties themselves was closed five months earlier pursuant to the court's order setting October 11, 2005, as the "final" date for the depositions of the parties. As noted, on October 6, 2005, Lazerric was deposed and testified

15

about the lighting on the day of his fall; however, plaintiffs did not bring their amendment for five months, waiting until after resolution of Martinez's motion for summary judgment.

More importantly, however, plaintiffs have never explained their failure to raise the lighting issue at an earlier time. The state of the lighting on the day of Lazerric's fall was not the type of fact that would elude plaintiffs' discovery and, therefore, be understandably omitted until such discovery could be made. In fact, it is clear from Lazerric's deposition that he knew on the day of his fall that the light was out. Moreover, even if Lazerric did not understand the potential legal implications of that fact, plaintiffs have proffered no reason why they did not bring their motion for leave to amend at sometime after Lazerric's deposition and prior to the circuit court's ruling on Martinez's summary judgment motion. In their response to Martinez's motion, plaintiffs did request leave to amend their complaint to allege that other tenants' use of a washing machine would cause an unnatural accumulation of water near the stair case, but they did not also seek to allege negligence on the basis of insufficient lighting. Thus, since plaintiffs had sufficient previous opportunity to make an amendment, the circuit court was well within the latitude of its discretion to deny their belated motion for leave to amend.

Finally, we note that when ruling on whether to allow an amendment, a court "may consider the ultimate efficacy of a claim as stated in [the] proposed amended pleading." Hayes Mechanical, Inc. v. First Industrial, L.P., 351 Ill. App. 3d 1, 7, 812 N.E.2d 419, 425 (2004). In this regard, there is merit to Martinez's assertion that even if plaintiffs were allowed to amend, they could not prevail because Lazerric admitted in his deposition that the wetness on the stairs was the sole reason that he fell. As noted, in that deposition, Lazerric was asked: "Was there

16

anything else other than the rain water on the stairs that you believe caused you to fall?" In response, Lazerric answered: "no." Although considering Lazerric's later statements regarding the lack of lighting, this "admission" may not necessarily have proved fatal to plaintiffs' claim had the amendment been allowed, that statement certainly would have presented a formidable hurdle for plaintiffs.

### III. CONCLUSION

For all of the foregoing reasons, we affirm.

Affirmed.

FITZGERALD-SMITH, P.J., and McNULTY, J., concur.