THE LOMBARD COMPANY, Plaintiff-Appellant, v. THE CHICAGO HOUSING AUTHORITY, Defendant-Appellee.

First District (1st Division) No. 1—90—1579

Opinion filed September 30, 1991.—Rehearing denied November 25, 1991.

James D. Montgomery & Associates, Ltd., of Chicago (James D. Montgomery and Robert P. Vogt, of counsel), for appellant.

Schiff, Hardin & Waite, of Chicago (Walter C. Greenough and Mark C. Friedlander, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff, The Lombard Company (hereafter plaintiff or TLC), appeals from the order of the circuit court of Cook County dismissing its verified four-count breach of contract complaint against defendant, the Chicago Housing Authority (hereafter defendant or CHA), for failure to timely file the cause of action pursuant to the four-year statute of limitations found in section 13—214 of the construction limitations act (Ill. Rev. Stat. 1987, ch. 110, par. 13—214). TLC contends that the 10-year statute of limitations found in section 13—206 (Ill. Rev. Stat. 1987, ch. 110, par. 13—206) is the governing provision because its complaint sought damages for extra work caused by defendant's obstruction and interferences with TLC's performance on a construction project in violation of the parties' written contract. In the alternative, TLC contends that CHA was estopped from relying on section 13—214 to bar its action. We affirm in part, reverse in part and remand.

On October 7, 1981, TLC, an Illinois building contractor, was awarded a bid contract by CHA to construct 180 apartment units (hereafter the project). The contract required TLC to complete construction of the project within 480 days of November 2, 1981, *i.e.*, by February 19, 1983. However, according to TLC because of CHA's obstructions and interferences, it did not begin the project until mid-March 1982 and actually completed the construction on or about September 19, 1983.

In its complaint filed on September 12, 1989, TLC charged that CHA failed to fulfill its obligations pursuant to the contract and

that such actions and inactions caused substantial construction delays, to wit, 267 days. The complaint specifically alleges, *inter alia*, that: (1) CHA failed to make the site available on November 2, 1981, as promised and, in fact, did not obtain title to the site until December 24, 1981; (2) CHA delayed in obtaining the necessary zoning permits until March 25, 1982; (3) CHA delayed the city's issuance of a building permit until July 29, 1982, because it waited until May 1982 to authorize the architect, Graham, Anderson, Probst & White (hereafter architect or Graham, Anderson) to release the site plans to the city, a prerequisite for issuance of the building permit; and (4) CHA failed to approve shop drawings in the allocated time period or within a reasonable time although the parties had agreed to a condition that allowed CHA to be a part of the shop drawing submittal process and a new schedule which gave CHA and Graham, Anderson 30 days in which to review and approve or reject the shop drawings submitted by TLC. The complaint further alleged that after construction of the building itself finally began, CHA requested numerous changes; however, CHA then failed to timely approve TLC's cost approvals that were required prior to implementation of the requested changes. TLC also alleged that CHA delayed getting utility services, which prevented TLC from installing gas and electric lines into the building, and CHA failed to supply kitchen appliances when required.

As a result of CHA's actions, TLC incurred costs beyond those contemplated in the contract, to wit: (1) $69,165 in extra costs for additional materials, equipment and rental costs; (2) $116,205 in costs for masonry protection that was required because TLC had to construct temporary, winter protection structures in order to proceed with the concrete work when CHA failed to obtain title to the site or make arrangements for utility services for the buildings in a timely fashion; (3) $76,649 in extra expenses for wage increases; (4) $143,718 in extra expenses for field overhead; and (5) $130,348 in extra expenses for office overhead, for a total damages amount of $536,885. The complaint also alleged that CHA improperly withheld from TLC a retainage fund payment in the amount of $37,260.

CHA also entered into a contract with architect Graham, Anderson to perform all professional services necessary for planning and designing the project and architectural work. CHA, in turn, was required to approve the design documents and each phase of the work.

Soon after construction commenced, TLC began negotiating with CHA for reimbursement of the increased costs and, on May

14, 1982, submitted a formal request to CHA for a change order indicating that TLC was going to incur some $500,000 in extra costs. The complaint also alleges that some time during the series of meetings held in 1982 CHA acknowledged its liability to TLC for extra costs incurred due to CHA's interference with TLC's contract performance; that TLC was to hold its claim in abeyance during the period of contract performance; that once the building was completed, TLC was to submit a claim to CHA for the extra costs; and that TLC was entitled to additional days for contract completion due to delays not originating with TLC. CHA commissioners then approved "Change Order No. 34," a payment to TLC in the amount of $142,538. TLC executed the order with the proviso that "it did not waive the remainder of its claim." However, CHA never executed the change order. On October 20, 1983, TLC submitted its formal claim to CHA for extra compensation in the amount of $527,087.

On November 27, 1989, CHA filed a section 2—615 motion to dismiss the complaint (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), on the ground that TLC's claims were barred by the statute of limitations since CHA had engaged in the planning, designing, supervision or management of the project. CHA asserted that section 13—214(a) requires a party to bring a construction-related action within four years from the time the person bringing the action knew or should have known of the act or omission giving rise to the cause of action. Thereafter, TLC filed briefs in opposition to the motion to dismiss relying on section 13—206 which provides a 10-year statute of limitations for an action on a written contract. The trial court granted CHA's motion to dismiss on April 3, 1990, and thereafter denied TLC's amended motion for reconsideration. In its amended motion to reconsider, TLC requested the trial court to consider facts "which show that defendant is equitably estopped from asserting a statute of limitations defense" and it attached correspondence between the parties to support its position that CHA never disputed liability, that settlement negotiations were limited to the extent of damages, and that the parties were negotiating both before and after the expiration of the putative limitations period.

The trial court held: "[The CHA] got so involved in the construction process and so involved in hindering and delaying and by their own mismanagement [they] brought themselves within the protection of [section 13—214]." TLC has appealed from these two adverse rulings, and for purposes of this appeal, all allegations of fact in TLC's verified complaint filed are accepted as true.

TLC first argues on appeal that section 13—214 does not apply to the present case because the complaint does not contain any allegations of fact that CHA engaged in an act or omission described by this section, but merely alleges that CHA is being sued as a landowner for breach of contract. TLC contends that its complaint is not, in any way, based on some act or omission relating to "planning, designing, supervising or management" of the project within the meaning of section 13—214. Rather, this is the typical situation whereby an owner hires an architect to prepare plans and designs that a builder thereafter follows, and the landowner's function, on the other hand, is limited to obtaining title to the land, arranging for utilities to be provided, and providing any additional information that might be needed. Thus, TLC argues that the instant complaint is merely a breach of contract action governed by section 13—206. Although we agree with the trial court that section 13—214, rather than section 13—206, is the correct statute to consider in this case in determining whether TLC's complaint was timely, we disagree with the reasoning of the trial court in reaching that decision.

■ Section 13—214(a) provides:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1987, ch. 110, par. 13—214(a).

TLC relies on *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 467 N.E.2d 363, where this court held that section 13—214 does not apply to actions against landowners where the action is based on the defendant's status as a landowner, and not on an act or omission in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property. (*C.S. Johnson*, 126 Ill. App. 3d at 511.) The court there reached its decision by looking to the legislative history of the statute. Representative Dunn, one of the bill's sponsors, stated "The purpose of this Bill is to provide some relief for professionals, who are trying to exercise their sound judgment in the design and construction of improvements to real property ***." (80 Ill. Gen. Assem., House Proceedings, May 25, 1979, at 32 (statements of Representative Dunn).) However, in 1986 our supreme court harmonized the *C.S. Johnson* case and the later deci-

sion in *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473, when it explained in *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34, that the current statute "does not exclude persons based upon their status," but "protects, on its face, anyone who engages in the enumerated *activities.*" (Emphasis in original.) *Skinner v. Hellmuth,* 114 Ill. 2d at 261.

■ In support of its argument, CHA maintains that section 13—214 applies by its terms to all persons engaged in construction-related activities. We agree. We have reviewed the cases and believe that they hold that section 13—214 is not applicable to a landowner unless that landowner is actually engaged in the professional planning, supervision or management of a construction project or the construction of an improvement to the property. For purposes of a motion to dismiss, the court must look to the allegations of fact contained in the complaint to determine whether the particular activities the landowner has purportedly engaged in or failed to engage in, as the case may be, fall within the purview of the statute.

■ Of the complained-of activities in TLC's complaint, we believe that the allegation that CHA failed to approve or reject the shop drawings within the time schedule brings this action within the purview of the statute. As the trial judge stated, "CHA interposed itself into the process of shop drawings." When TLC reluctantly agreed to allow CHA to participate in the shop drawing process, it allowed it to become involved in the planning, supervision and management of the construction project.

Accordingly, we hold that although one of the main purposes of section 13—214 is to prevent liability in perpetuity against persons involved in the design and construction of buildings, such as architects, contractors and engineers (see 80th Ill. Gen. Assem., House Proceedings, May 25, 1979, at 11), it also governs a landowner in a breach of contract action who is being sued for an act or omission of one of the specified construction-related activities or for actual construction. Thus, we affirm the trial court's order dismissing the complaint as time barred by section 13—214.

■ We now turn to the issue of whether CHA is estopped from asserting the statute of limitations as a defense. It is well settled that "equitable estoppel" and "waiver" are two distinct concepts which, however, are very similar and often used interchangeably. A waiver is defined as a voluntary relinquishment of a known right, claim or privilege (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 335 N.E.2d 491), whereas an equitable estoppel may arise even

though there was no intention on the part of the party estopped to relinquish any existing right. Moreover, prejudice to the other party is one of the essential elements of an equitable estoppel. The principle of equitable estoppel has been applied to bar reliance on the statute of limitations even where there was no intent to deceive or mislead. (*Witherell v. Weimer* (1987), 118 Ill. 2d 321, 330, 515 N.E.2d 68.) The doctrine of equitable estoppel has also been applied against local governmental entities. See *Kievman v. Edward Hospital* (1985), 135 Ill. App. 3d 442, 481 N.E.2d 909 (and the cases cited therein).

We believe that the doctrine of equitable estoppel applies to the present case. The facts alleged in TLC's amended motion for reconsideration adequately raised the defense of estoppel. Sometime in 1987, the parties agreed to submit all of their documentation to an accounting firm for an analysis and review of the figures. On August 6, 1987, CHA's attorney wrote a letter to TLC indicating that "[i]f we are unable to negotiate a settlement, we agreed to file a joint demand for arbitration sixty (60) days after you have authorized Ernst & Whinney to proceed, on approximately October 19, 1987." According to TLC, the parties were continuing their negotiations on April 5, 1989, when CHA first raised section 13—214 as a bar to TLC's claim. Even so, the letter of that date discusses settlement "[i]f substantial justice can be achieved."

Accordingly, the documentation attached to the motion arguably shows that the conduct and representations of the CHA officials, coupled with the negotiations between the parties in 1987 and 1989, both before and after the expiration of the limitation period, lulled TLC into a false sense of security that its claim would be settled regardless of the limitation period. (See *Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 497 N.E.2d 410.) Like our decision in *Searcy*, we find that "[s]uch conduct may work an estoppel." *Searcy*, 146 Ill. App. 3d at 784.

■ Because TLC's estoppel argument presented a question of fact, it was improper for the court to dispose of the issue as a matter of law. (See *Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565.) We further find that because TLC included in the record and raised before the court the basis for a factual determination on its equitable estoppel argument, the trial court should have allowed an amendment to the pleadings. Although a proposed written amendment is desirable, it is not crucial where the record, as here, reveals that the movant articulated the substance of the amendment and the reasons therefor to the court in such a man-

ner that the materiality of the proposed change or addition is made plain to the court or in the proceedings. See *Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1958), 13 Ill. 2d 258, 266-67, 148 N.E.2d 777.

Based on the foregoing, we affirm the trial court's finding that this action is governed by section 13—214 of the Code; we reverse the trial court's order dismissing the complaint and remand the cause for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

CAMPBELL and BUCKLEY, JJ., concur.