SECOND DIVISION

September 4, 2001

No. 1-00-1940

BLINDERMAN CONSTRUCTION CO., INC   )         Appeal from the

)         Circuit Court of

    Plaintiff-Appellant, )         Cook County. 

) 

v. )         No. 93 L 15401

) 

METROPOLITAN WATER RECLAMATION )

DISTRICT OF GREATER CHICAGO )         The Honorable

)         James F. Henry 

Defendant-Appellee. )         Judge Presiding. 

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Blinderman Construction Company (plaintiff or Blinderman) appeals from the judgment of the circuit court of Cook County granting summary judgment in favor of defendant the Metropolitan Water Reclamation District of Greater Chicago (defendant or the District) on the grounds that plaintiff's claim is time barred.  One appeal plaintiff argues that the ten-year statute of limitations for written contracts applies to its claim pursuant to section 13-206 of the Code of Civil Procedure (735 ILCS 5/13-206 (West 1992), rather than the four-year statute of limitations provided in section 13-214(a) (735 ILCS 5/13-214(a) (West 1992)).  We affirm.  

BACKGROUND

The essential facts of this case are not in dispute.  The parties entered into the contract at issue in this case on or about April 28, 1983.  Under the contract, which will be more fully set out in the analysis section of this order, Blinderman agreed to construct a laboratory building for the District for the amount of $8,534,748.  Blinderman was paid $8,852,611.84, for its work on the project.

In its verified two count complaint filed December 16, 1993, Blinderman contends that it is owed the additional amount of $3,268,774.79.  This amount consists of $378,804.79, for "extra work" due to certain "additions and deletions [which] were agreed on by the parties" and $2,889,970.00, for additional "extra work" performed "at the direction of the District," pursuant to "change proposals."  Count I alleged that the District breached the contract by failing to pay for the extra work and change proposals.  Count II alleged that the District breached the implied covenant of good faith and fair dealing by inducing Blinderman to engage in good-faith negotiations over the amount due knowing that in the interim Blinderman was forbearing filing suit and then falsely asserting that negotiations had ended years earlier. 

On February 16, 1994, the District moved "to dismiss [Blinderman's] complaint" pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)) on the grounds that it was time barred under the limitations provisions of section 13-214 of the Code of Civil Procedure (735 ILCS 5/13-214(a) (West 1992)).  That statute provides for a four-year period of limitations for actions based on tort or contract against any person for an act or omission occurring in the performance of certain activities related to construction (the relevant portions of section 13-214(a) will be set out in full in the analysis section of this order).  In its motion to dismiss the District argued that it was entitled to the protection of section 13-214(a) because the contract at issue "was for the construction of improvements to real estate and [therefore] comes within the" provisions of section 13-214(a).  Blinderman contended that this action was governed by the ten-year statute of limitations for written contracts pursuant to section 13-206 (735 ILCS 5/13-206 (West 1992)).  At a hearing on the motion to dismiss on May 6, 1994, Judge Gillis ("the first judge") denied that motion, agreeing with Blinderman that the action was not time-barred by section 13-214(a).

Apparently before an answer was filed, on July 18, 1994, Blinderman filed a first amended verified complaint which included the same breach of contract claim as count I, but substituted a different cause of action in count II.  The amended complaint alleged in count II a violation of the Local Government Prompt Payment Act (50 ILCS 505/1 
et seq.
 (West 1992)).  Blinderman contended that under the Prompt Payment Act any bill for goods or services provided by a contractor to a contracting governmental entity must be paid within 30 days of its approval.  In its answer on December 20, 1994, the District raised the statute of limitations as an affirmative defense.  In its reply to the District's answer on January 17, 1995, Blinderman contended that the District was estopped from raising the statute of limitations, apparently because of the protracted settlement negotiations between it and the District as alleged in count II of the original complaint.

The case proceeded through discovery, at the close of which the District moved for summary judgement on November 21, 1997.  With respect to count I, the District once again contended that it was time-barred by section 13-214(a) because the District participated in the construction of the project.  In its memorandum in support of its motion, the District contended that it "prepared all contract plans, specifications and drawings, including the detailed drawings for the project's process design, structural design, electrical design and electrical design-power and electrical-design lighting."  The District also contended that under the contract it is permitted to make "any changes to the specifications and plans deemed necessary."  The District's engineer is vested with broad powers, including the power to direct that extra work be performed (unless its cost exceeds $5,000, in which case in the District's board must approve it).  Additionally the District pointed out that under the contract the power of the engineer extendes to the imposition of liquidated damages unless the engineer determines that the delay was not Blinderman's fault.  In the latter event, the completion date could be extended to avoid the imposition of liquidated damages.  The engineer also has the power to reject substandard materials, and to determine the amount of damages growing out of any violation of the contract.  Additionally, in support of its motion for summary judgment with respect to count I, the District urged that its conduct in settlement negotiations prior to the commencement of Blinderman's suit did not estop it from raising the statute of limitations as a defense.

The District also urged that it was entitled to summary judgement on count II because the Prompt Payment Act claim was barred due to Blinderman's failure to fulfill a condition precedent.  The District argued that its approval of the bill which Blinderman claimed was not paid within 30 days as required by the Act was contingent on Blinderman's submitting a release, which Blinderman did not do.

One March 5, 1998, Judge Neville ("the second judge") denied the District's motion for summary judgment as to count I.
(footnote: 1)  He ruled that while section 13-214(a) applied to this case, there was an issue of fact as to whether the District was estopped from raising it.  On May 14, 1998, the trial court entered an order granting the District's motion for summary judgment on count II.  Concomitantly, the court also granted the District's motion for a bifurcated trial on count I.  The first trial would determine if the District was estopped from raising the statute of limitations as a defense to count I.  If it was necessary, a trial on the merits of Blinderman's claim in count I would be held later.  

A bench trial on the estoppel issue before Judge Henry ("the third judge") began on November 4, 1999.  After the evidence was closed, the District moved for a directed finding and its motion was granted.  Blinderman then moved for reconsideration of the second judge's ruling than section 13-214(a) applied to this case.  This motion was denied. 

ANALYSIS

On appeal Blinderman contends, as it did below, that the statute of limitations applicable to this case is section 13-206 which provides for a ten-year limitation period.  The District contends that the four-year limitation period under section 13-214(a) is applicable to actions based on tort or contract for acts or omissions of persons engaged in the design, planning, supervision, observation, or management of construction.  We agree with the District.

Blinderman would urge that the provisions of section 13-214(a) were intended to apply to actions for recovery of damages to incurred through defects in the construction work performed, whether under tort or contract whether occasioned by negligence in tort, or by breach of contract.  Typically, such actions would involve things such as cracks in a foundation discovered well after construction is completed.  Blinderman therefore urges that the statute be limited to the scope espoused by various legislators in the debates on its enactment.  See generally, 81
st
 Ill. Gen. Assem., House Proceedings, May 25, 1979 at 29-41.  Such an interpretation, however, does violence to the plain and unambiguous language of the statute.

Section 13-214(a) provides:

"Actions based upon tort, contract, or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such an act or omission."  735 ILCS 13-214(a)(West 1992). 

When construing a statute, the intent of the legislature must be ascertained and given effect.  
General Motors Corp. v. Industrial Commission
, 62 Ill.2d 106, 112, 338 N.E.2d 561, (1975).  However, the "language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted."  
155 Harbor Drive Condominium Association v. Harbor Point, Inc.
, 209 Ill. App. 3d 631, 642, 568 N.E.2d 365, 372 (1991) (refusing to examine the legislative history of section 13-214).

Under its plain language, the provisions of section 13-214(a) extend to acts or omissions in the supervision or management of construction.  Thus, under these provision, section 13-214(a) becomes applicable to actions for recovery of payments due under the contract for work engendered by the District in its capacity as supervisor and/or manager of construction.  As we noted above, the District, through its engineer, exercised supervisory and managerial control over the project.  For example, there is no dispute as to the engineer's powers to order extra work and to direct the time at which it is performed.  The engineer also had the power under the contract to impose liquidated damages for delay, or to extend the period of performance so is to avoid the imposition of such damages.  The District also prepared all the plans specifications and drawings for the design of the project and was authorized to order changes to those plans under the contract.  Thus the action in the instant case which seeks to recover for extra work performed as a result of the acts or omissions of the District is subject to the explicit provisions of section 13-214(a).

This result is consistent with the holding in 
Lombard Co. v. Chicago Housing Authority
, 221 Ill. App. 3d 730, 587 N.E.2d 485 (1991).  
Lombard
 did not involve a lawsuit for damages arising from defects in construction; rather, it involved a suit for monies due to a building contractor for work which he performed.  Under the facts of 
Lombard
, the plaintiff building contractor was hired by the defendant housing authority to erect an apartment building.  The plaintiff incurred costs well beyond those contemplated in the contract and sued the defendant to recover them.  The plaintiff alleged that it incurred the costs because the defendant failed to make the site available on time, failed to obtain zoning and building permits in a timely manner and failed to approve "shop drawings" within the allocated time period.  
Lombard
, 221 Ill. App. 3d at 732, 587 N.E. 2d at 487.

The 
Lombard
 court held that the allegation that the defendant failed to approve the shop drawings within the allocated time brought the defendant within the purview of section 13-214(a).  
Lombard
 221 Ill. App. 3d at 735, 587 N.E.2d at 489.  The court stated that:

"[A]lthough one of the main purposes of section 13-214 is to prevent liability in perpetuity against persons involved in the design and construction of buildings, such as architects, contractors and engineers [citation], it also governs a landowner in a breach of contract action who is being sued for an act or omission of one of the specified construction related activities or for actual construction." 
Lombard
, 221 Ill. App. 3d at 735, 587 N.E.2d at 489.

The court thus held that the plaintiff's lawsuit was barred by section 13-214(a).

As in 
Lombard
, the suit against the District in the instant case invokes the liability of the District for actions taken within the scope of its managerial and supervisory function.  Pursuant to the terms of the contract, the engenderment
(footnote: 2) of extra work and changes are within the purview of the District's engineer.  For example, article seven of the contract provides that the "contractor shall perform such extra work as the engineer may direct in his written order" provided that extra work in excess of $5,000 requires that the board authorize the engineer to order the work.  The contract further provides that "[a]ll extra work shall be performed at such time as the engineer directs."  When extra work is required for which the price is not fixed in the contract "the engineer shall fix such prices for the work as he shall consider just and equitable, and the contractor shall abide by such prices."  Article 5 of the contract also provides for deviations from the contract.  It states that the District "reserves the right to make any changes in the specifications and plans which may be deemed necessary."  The contract further provides that the engineer will determine what price is to be paid for extra work if no lump sum prices are specified for the work in the contract.  It also provides that minor changes will be made by the contractor without additional charge.  The engineer has the power to determine what constitutes a minor change. 

The application of section 13-214(a) espoused in 
Lombard
 which we have adopted in the case at bar is fully consistent with our supreme court's holding in 
Skinner v. Hellmuth, Obata and Kassabaum, Inc.
, 114 Ill. 2d 252, 500 N.E.2d 34 (1986).  In that case our supreme court held that determining when section 13-214(a) applies based on whether a defendant participated in the enumerated construction related activities is constitutionally permissible.  Section 13-214(a) therefore does not run aground as impermissible special legislation and does not run afoul of our supreme court's holding in 
Skinner v. Anderson
, 38 Ill. 2d 455, 231 N.E.2d 588 (1967). 

The 
Hellmuth
 court rejected the contention that section 13-214(a) was impermissible special legislation, noting that the statute in 
Anderson
 excluded from its ambit, 
inter alia
, owners "based solely on the status of the defendant as an owner, tenant or possessor."  
Hellmuth
, 114 Ill. 2d at 260, 500 N.E.2d at 37.  Section 13-214(a), however, "does not exclude persons based on their status."  
Hellmuth
, 114 Ill. 2d at 261, 500 N.E.2d at 37.  Rather, it "protects, on its face, anyone who engages in the enumerated 
activities
."  
Hellmuth
, 114 Ill. 2d at 261, 500 N.E.2d at 37. 

In the facts of 
Hellmuth
, the plaintiff sued the defendant architects and contractors for defects in a building and also sued a bonding company which guaranteed the performance of one of the contractors.  Thus, since the defendant architect and contractors in 
Hellmuth
 had engaged in the enumerated activities, they were entitled to the protection of section 13-214(a).  The court also held that because the bonding company did not engage in any of the activities enumerated in section 13-214(a) it was not entitled to the protection of section 13-214(a).  The court stated that the claims against the bonding company were grounded solely on the issuance of a performance bond which "can not be deemed to be engaging in the 'design, planning, supervision, observation or management of construction or construction' and thus does not appear to fall within the statute's protection."  
Hellmuth
, 114 Ill. 2d at 263, 500 N.E.2d at 39.  In our case too, the protection of section 13-214(a) apples to those parties who are engaged in construction.  However, the defendant in our case, unlike the bonding company in 
Hellmuth
, was actively engaged in the construction process and through these activities engendered the claim for which it was sued.

Blinderman's attempts to distinguish 
Lombard
 from the case at hand are unpersuasive.  Blinderman argues that 
Lombard
 is different in that the claim there
 was not based on anything expressed in the contract but on an implied covenant not to delay the work.  This is a  distinction without a difference.  There is no question that section 13-214(a) applies on its face to actions arising under the contract as well as duties not specified in the contract.  In point of fact, section 13-214 provides for actions in tort, contract or otherwise.  
155 Harbor Drive
, 209 Ill. App. 3d at 642, 568 N.E.2d at 372 (section 13-214 "is applicable *** because the claim involves an action based upon a warranty, which is a contract, against persons who *** were *** involved in *** construction").  Under section 13-214(a) the key determination is whether the defendant engaged in the construction activities enumerated under section 13-214(a) whether or not those activities involved express contractual duties or, as in 
Lombard
, implied duties.  In both 
Lombard
 and the instant case, the plaintiff's cause of action was predicated on activities performed by the respective defendants which were encompassed within the enumerated construction activities of section 13-214(a).  Moreover, in both cases
, there is a direct nexus between the activities of the defendant and the plaintiff's cause of action in that the cause is predicated on the construction activities in which the defendant was engaged as enumerated in section 13-214(a).

Since such a nexus is present in this case, our decision is consistent with Blinderman's suggestion that section 13-214(a) has historically been applied only to cases where the plaintiff's injury was a direct result of the defendant's engaging in the enumerated activities of "design, planning, supervision, observation or management" of construction.  See, 
e.g.
, 
O'Brien v. City of Chicago
, 285 Ill. App. 3d 864, 870, 674 N.E.2d 927, 933 (1996); 
155 Harbor Drive Condominium Association v. Harbor Point Inc.
, 209 Ill. App. 3d 631, 568 N.E.2d 365 (1991); 
Elsa Benson, Inc. v. Kalman Floor Co., Inc.
, 191 Ill. App. 3d 1016,, 548 N.E.2d 485 (1989).  Blinderman's claimed injury was a direct result of such activity. 

Blinderman's reliance on 
Armstrong v. Guigler
, 174 Ill. 2d 281, 673 N.E.2d 290 (1996), is misplaced.  In 
Armstrong
, the court stated that "it is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period shall apply."  174 Ill. 2d at 286, 673 N.E.2d at 293.  Blinderman thus contends that the nature of the injury in this case is the failure to pay, which in and of itself does not involve defendant's participation in the enumerated activities.  Blinderman urges that under our analysis the choice of which statute to apply is a function of the facts from which the claim arises, in contravention of 
Armstrong
 which looks only to the nature of the injury for which relief is sought.  We disagree.

Armstrong
 involved the question of whether to apply in a given case the ten-year statute of limitations for actions on a written contract pursuant to section 13-206 or the five-year statute of limitations for all civil actions not otherwise provided for pursuant to section 13-205 (735 ILCS 5/13-205(West 1992).  With respect to that choice, the characterization of the action is central, while the factual origin of each action is secondary.  It was this consideration which generated the court's comment upon which Blinderman now relies when it states that the nature of the injury controls.  In our case, the choice between the statutes prescribing the different periods of limitation looks to the nature of the defendant's activities rather than to the form of the action.  735 ILCS 5/13-214(West 1992).  In this context, it is not our supreme court's decision in 
Armstrong
 which controls, but our Supreme Court's decision in 
Hellmuth
, stating that section 13-214(a) "protects, on its face, anyone who engages in the enumerated 
activities
." (emphasis in original)  
Hellmuth
, 114 Ill. 2d at 261, 500 N.E.2d at 37.

Finally Blinderman cites two other cases (
Santucci Construction Co. v. City of Danville
, 128 Ill. App. 3d 954, 471 N.E.2d 1000 (1984); 
Berg and Associates, Inc. v. Nelsen Steel & Wire Co.
, 221 Ill. App. 3d 526, 580 N.E.2d 1198 (1991)) where courts applied section 13-206 to a defendant's failure to pay a contractor for extra work under a construction contract.  Those cases are not helpful since in neither case is any issue raised, or any analysis provided, as to which statute shall apply, or as to what the applicable limitations period should be.  The central issue in both cases concerned the date from which the period of limitations began to run, whether from when the contract is completed or from the time when the final payment on the contract was due.  No consideration at all was given with respect to any question as to which period of limitations applied.  Thus we must be guided by 
Lombard
 and 
Hellmuth
 in which the choice of which statute of limitations to apply was the focal issue, raised, discussed and decided.

Blinderman next argues that 
Lombard
 should not be applied retroactively to the case at bar.  In support, Blinderman contends that prior to 
Lombard
 no court had applied section 13-214(a) to a "failure to pay" case.  Blinderman thus concludes that 
Lombard
 was a case of first impression whose resolution was not clearly foreshadowed.  We disagree.

"[W]hether a ruling will be applied prospectively will depend upon whether the decision to be applied non retroactively establishes a new rule of law *** by deciding an issue of first impression whose resolution was not clearly foreshadowed."  
Bogseth v. Emanuel
, 166 Ill. 2d 507, 515, 655 N.E.2d 888, 892 (1995). 
 

As we noted above, in 
Hellmuth
 our supreme court construed section 13-214(a) to apply to "anyone who engages in the enumerated 
activities
."  
Hellmuth
, 114 Ill. 2d at 261, 500 N.E.2d at 37 (emphasis in original).  Given this holding, and the plain language of section 13-214(a), we cannot say that 
Lombard
 was decided as a case of first impression whose holding was not clearly foreshadowed.  

Moreover, the cases cited by Blinderman to show that section 13-206 applies to "failure to pay" cases are inapposite.  As we discussed above, 
Santucci
, 128 Ill. App. 3d 954, 471 N.E.2d 1000, and 
Berg
, 143 Ill. 2d 635, 587 N.E.2d 1011, do not address the issue of when section 13-214(a) applies.  As we further noted above, while 
Hellmuth
 addresses the issue of the application of section 13-214(a), its holding is consistent with our application of section 13-214(a) to this case. Finally we note that 
Strom v. Lipschultz
, 5 Ill. App. 3d 308, 282 N.E.2d 257 (1972), is irrelevant to this issue because section 13-214(a) had not yet been enacted when it was decided.

For the reasons discussed above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J. and McBRIDE, J. concur.

FOOTNOTES
1:
Although the order is silent as to which count it applies, it is apparent that it only applies to count I. 

2:
A review of the specific disputes from which this litigation results demonstrates that this lawsuit arises from the District's engaging in the enumerated construction-related activities, similar to the process of approving "shop drawings" which brought the defendant CHA within the ambit of section 13-214(a) in 
Lombard
.  A number of the disputes over extra work involve the District's rejection of materials, services, or subcontractors.  For example, the District rejected a manhole cover, a copper water line, the subcontractor for the project's telephone systems and the finish on the sidewalk.  Several of the disputes center around alleged errors in the District's design plans and specifications for the project.  For example, there are disputes as to whether the District's drawings show waterproofing of concrete walls; whether the cracks in the masonry resulted from improper design of the project; the failure of the District's drawings to show faucets, piping, grouting, locking devices; and numerous alleged inconsistencies in the District's drawings.  There are also disputes over the condition of the building site.  There are further disputes as to whether certain delays in the project were due to the District's conduct.  There are further disputes as to whether the District authorized extra work and as to the District's setting the value of certain extra work as is its responsibility under the construction contract.