PASCHEN CONTRACTORS, INC., Plaintiff-Appellant, v. THE CITY OF KANKAKEE, ILLINOIS, Defendant-Appellee (Modern Electric Company of Illinois, Plaintiff; Donohue and Associates, Inc., Defendant).

Third District   No. 3—03—0602

Opinion filed November 22, 2004.

Steven J. Rotunno (argued), John C. Anderson (argued), and John A. Dienner, all of Kubasiak, Fylstra, Reizen & Rotunno, P.C., of Chicago, for appellant.

Douglas J. Palandech, James T. Ferrini, Agelo L. Reppas (argued), Edward M. Kay, and Tracey A. Jordan, all of Clausen Miller, P.C., of Chicago, and Christopher W. Bohlen, of Barmann, Bohlen & Woodruff, of Kankakee, for appellee City of Kankakee.

Laurie Randolph and Joshua G. Vincent, both of Hinshaw & Culbertson, of Chicago, and Hugh N. Anderson, of Wickwire Gavin, P.C., of Madison, Wisconsin, for appellee Donohue & Associates, Inc.

JUSTICE McDADE delivered the opinion of the court:

Plaintiff, Paschen Contractors, Inc. (Paschen), appeals from an order striking portions of its complaint and denying its motion to file

a third amended complaint and a grant of summary judgment in favor of defendants, City of Kankakee (Kankakee) and Donohue & Associates, Inc. (Donohue). For the following reasons, we reverse.

## BACKGROUND

In 1984, Kankakee advertised for bids to build a wastewater treatment facility (the project) that would permit expansion of sanitary sewers in the city. Kankakee hired Paschen in April 1986, pursuant to a general contract, as the general contractor for the project. The general contract designated Donohue as the project engineer and the authorized representative of Kankakee. The general contract provided as follows:

"6.9 *** Nothing in the Contract Documents shall create any contractual relationship between [Kankakee] or [Donohue] and any Subcontractor or other person or organization having a direct contract with [Paschen], nor shall it create any obligation on the part of [Kankakee] or [Donohue] to pay or see to the payment of any moneys due any Subcontractor or other person or organization, except as may otherwise be required by law."

In July 1986 Paschen hired Modern Electric Company (Modern) to perform the electrical work on the project for $1.5 million. Modern was bound to Paschen under the terms of its subcontract by all the terms and conditions of the general contract. Section 8 of the subcontract states:

"No charges by [Modern] for extras shall be binding upon [Paschen] unless accepted or approved by [Kankakee], and [Paschen] shall not be liable to [Modern] on account of such changes unless and until [Paschen] shall receive payment from [Kankakee]."

After executing the subcontract, Paschen began construction. Because Kankakee had obtained federal funding for the project, Paschen's contract was subject to certain Environmental Protection Agency regulations, which, among other things, provided an orderly process for changes in the work. The general contract required that a "change order" be issued to effectuate such changes. Donohue, under Kankakee's direction, was responsible for reviewing and approving these change orders. Any claim for an increase in the contract price, according to the general contract, "shall be based on written notice delivered to [Kankakee] and [Donohue] within 10-days of the occurrence of the event giving rise to the claim."

While the project was ongoing, Paschen negotiated with Kankakee and Donohue for certain changes in the "construction sequence" of the project, changes that would result, as Paschen claimed, in a cost savings for Kankakee. In May 1987, Kankakee directed Donohue to accept the sequence changes suggested by Paschen. This change order did not increase the original contract price.

During the course of Paschen's performance, there were more than 20 change orders requested as provided in the contract that increased the contract price. Five of these change order requests remained unresolved near the end of the construction. They were:

(1) *Secondary Clarifier Slab Damage.* Paschen requested a change order in the amount of $108,711 to compensate it for the repair of the secondary clarifier No. 1 slab, which was damaged during construction by uplift forces caused by site flooding.

(2) *Sludge Storage Tank Foundation Reinforcing Steel.* Paschen requested a change order in the amount of $40,240 for additional reinforcing steel required for the four sludge storage tank foundations.

(3) *Sludge Storage Tank Seal Replacement.* Paschen requested a change order in the amount of $103,500 to pay for the replacement of a caulked seal with a combiflex seal in the joint between the wall and slab in each of four sludge storage tanks.

(4) *Construction Sequence Constraints.* Paschen requested a change order to pay for costs for temporary facilities required to implement its revised construction sequence.

(5) *Topsoil.* Paschen requested $54,288 for additional costs of purchase of topsoil.

In each instance, Paschen requested additional compensation by way of a written letter to Kankakee, as required by the general contract's provision governing claims for extra work. The amount of these proposed change orders totaled $1,940,130. Paschen also claimed that it regularly discussed with Kankakee its continuing problems, of which everyone was aware. Donohue reviewed Paschen's claims for additional compensation and determined that the work was within the scope of the general contract. On April 16, 1987, Donohue notified Paschen that "no request *** for additional compensation will be accepted." In a written letter dated on January 27, 1989, Donohue once again denied Paschen's requests for additional compensation.

The net effect of the denial was that Paschen failed to pay Modern for all the work Modern had finished. Modern filed a mechanic's lien against Kankakee on February 14, 1989, totaling $1.6 million.

On May 12, 1989, Modern filed a complaint against Kankakee, Paschen, and Donohue. Modern's complaint included (1) a claim for accounting against Paschen and Kankakee (count I), (2) a fraud claim against Kankakee and Donohue (count II), and (3) a breach of contract claim against Paschen as general contractor (count III). The project finally drew to a close in June 1989.

On August 20, 1991, Paschen entered into a written settlement agreement with Modern under which Modern received $100,000 in exchange for a full and complete release of Paschen from all liability.

The parties also agreed to jointly prosecute their claims against Kankakee. The agreement states:

"10. Modern Electric and Paschen agree that they will cooperate in analyzing, preparing, presenting and prosecuting the Consolidated Claim against [Kankakee]."

On February 14, 1992, Modern voluntarily dismissed its May 1989 claim. On the same day, Paschen and Modern brought breach of contract and fraud claims against Kankakee and Donohue. Paschen and Modern later amended the complaint (second amended complaint) to include a breach of contract claim by Paschen (count I), Modern's claim as an alleged third-party beneficiary of the contract between Paschen and Kankakee (count II), Modern's *quantum meruit* claim against Kankakee (count III), a claim by Paschen and Modern for intentional fraud against Kankakee and Donohue (count IV), and a negligent misrepresentation claim by Paschen and Modern against Donohue (count V).

On September 7, 1993, Donohue filed its motion to dismiss counts I, II, IV and V. On September 21, 1993, Kankakee filed a motion to strike count I and to dismiss counts II, III and IV pursuant to sections 2—615 (735 ILCS 5/2—615 (West 2002)) and 2—619 (735 ILCS 5/2—619 (West 2002)) of the Code of Civil Procedure (Code).

On March 15, 1994, the trial court dismissed counts II through V of the second amended complaint with prejudice. It also struck paragraphs 35 to 43 of count I, citing the well-established rule that subcontractors may not recover against the landowner in the absence of a contractual relationship. The judgment of dismissal entered by the trial court contains the following finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)): "There is no just reason for delaying enforcement or appeal of this [o]rder of dismissing, with prejudice, counts II, III, IV and V of [p]laintiffs' [s]econd [a]mended [c]omplaint."

On this first appeal, this court affirmed the trial court's dismissal of counts II, III, IV and V. However, with regard to count I, this court held that it lacked jurisdiction over Paschen's arguments. Thus, it expressed "no opinion regarding the merits of the trial court's decision" as to that count. This matter was then remanded.

On March 4, 1999, Paschen motioned for leave to file its third amended complaint. Approximately one-half of the two-count complaint references work performed by Modern. Defendants objected to this motion on the ground that it was improper for Paschen, a general contractor, to plead the claim of Modern, a subcontractor, since there is no contractual relationship between Modern and defendants.

On September 24, 1999, after considering the parties' additional authorities and arguments, the time elapsed since the dismissal of the first complaint, and the lack of a legitimate reason for that delay, the court denied Paschen leave to file its third amended complaint.

Defendants then filed a motion for summary judgment with respect to the breach of contract count in the second amended complaint. That count alleged Paschen had performed extra work not covered by the general contract. The extra or additional work Paschen allegedly performed included reinforcing four sludge storage tank foundations, installing a joint sealant for the sludge storage tanks, constructing joint water stops for the sludge storage tanks, placing additional topsoil around the wastewater facility, and correcting an uplift problem for the secondary clarifier tank.

Defendants claimed that these claims, with the exception of the sludge tank foundations claim, were time-barred under section 13— 214(a) of the Code, the four-year statute of limitations for construction of improvements to real property (735 ILCS 5/13—214(a) (West 2000)). Paschen responded that the trial court should apply section 13—206 of the Code, the 10-year statute of limitations for written contracts (735 ILCS 5/13—206 (West 2000)). The trial court found section 13—214(a) applicable and granted defendants' motion for summary judgment on that basis. The court then granted Paschen's motion to dismiss voluntarily the remainder of the cause pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 2002)).

This appeal followed.

## ANALYSIS

On appeal, Paschen argues the trial court erred (1) in granting summary judgment for defendants, (2) in striking paragraphs 35 through 43 of count I, and (3) denying it leave to amend. The trial court has broad discretion in determining whether to permit an amendment to the pleadings and its ruling on the matter will not be disturbed on review absent an abuse of discretion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216 (1992). In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). Summary judgment is governed by the provisions of section 2—1005 of the Code. 735 ILCS 5/2—1005 (West 2000). Under section 2—1005(c), a party is entitled to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—

1005(c) (West 2000). Because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 233, 564 N.E.2d 778, 780 (1990). Accordingly, the reviewing court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Logan*, 139 Ill. 2d at 234, 564 N.E.2d at 780. Where reasonable persons could draw divergent inferences from undisputed facts, summary judgment should be denied. *Loyola Academy*, 146 Ill. 2d at 272, 586 N.E.2d at 1215.

A. Summary Judgment and the Applicable Statute of Limitations

■ Paschen asserts that the trial court erred when it granted summary judgment in favor of defendants. Paschen argues that the controlling limitations period is 10 years, based upon section 13—206 of the Code. Kankakee maintains that the grant of summary judgment was proper because Paschen's original complaint failed to comply with the four-year limitations period found in section 13—214(a) of the Code. Section 13—206 provides, in pertinent part, as follows:

> "Ten year limitation. Except as provided in Section 2—725 of the 'Uniform Commercial Code', actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued ***." 735 ILCS 5/13—206 (West 2002).

Section 13—214(a) of the Code reads, in pertinent part, as follows:

> "Construction—Design management and supervision. As used in this Section 'person' means any individual, any business or legal entity, or any body politic.
>
> (a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 5/13—214(a) (West 2002).

To determine whether Paschen's original complaint was time-barred, we must first address the issue of whether the controlling limitations period is the 10 years designated in section 13—206 or the 4 years designated in section 13—214 of the Code. When deciding which of two statutes of limitations is applicable to a plaintiff's case, courts should consider the nature of the claims and the type of injuries sustained. *Greb v. Forest Preserve District*, 323 Ill. App. 3d 461, 463, 752 N.E.2d 519, 520-21 (2001).

We are aided by *Lombard Co. v. Chicago Housing Authority*, 221

Ill. App. 3d 730, 587 N.E.2d 485 (1991). *Lombard* involved a suit for monies due to a building contractor for work which he performed. In that case, the plaintiff, a building contractor, was hired by the defendant housing authority to erect an apartment building. The plaintiff incurred costs well beyond those contemplated in the contract and sued the defendant to recover them. The plaintiff alleged that it incurred the costs because the defendant failed to make the site available on time, failed to obtain zoning and building permits in a timely manner and failed to approve "shop drawings" within the allocated time period. *Lombard*, 221 Ill. App. 3d at 732, 587 N.E.2d at 486-87.

The *Lombard* court held that the allegation that the defendant failed to approve the shop drawings within the allocated time brought the defendant within the purview of section 13—214(a). The court stated:

> "[A]lthough one of the main purposes of section 13—214 is to prevent liability in perpetuity against persons involved in the design and construction of buildings, such as architects, contractors and engineers [citation], it also governs a landowner in a breach of contract action who is being sued for an act or omission of one of the specified construction-related activities or for actual construction." *Lombard*, 221 Ill. App. 3d at 735, 587 N.E.2d at 489.

The court thus held that the plaintiff's lawsuit was barred by section 13—214(a).

We also find *Blinderman Construction Co. v. Metropolitan Water Reclamation District of Greater Chicago*, 325 Ill. App. 3d 362, 757 N.E.2d 931 (2001), instructive. In *Blinderman*, the plaintiff, a general contractor, sued the defendant for its failure to pay for extra work he performed. Count I of the first amended verified complaint alleged that the defendant breached the contract by failing to pay for extra work and change proposals. Pursuant to the terms of the contract, the engenderment of extra work and changes were within the purview of the defendant's engineer. The defendant also " 'prepared all contract plans, specifications and drawings, including the detailed drawings for the project's process design, structural design, electrical design and electrical design-power and electrical-design lighting.' " *Blinderman*, 325 Ill. App. 3d at 365, 757 N.E.2d at 933.

The defendant moved for summary judgment on count I of the complaint on the ground that it was time-barred under section 13—214 of the Code. The plaintiff argued that its action was governed by the 10-year statute of limitations for written contracts pursuant to section 13—206. The trial court found in favor of the defendant and granted its motion for summary judgment. *Blinderman*, 325 Ill. App. 3d at 364-66, 757 N.E.2d at 933-34. The First District affirmed the

trial court's ruling on appeal. Relying on *Lombard,* the reviewing court found that the plaintiff's cause of action was predicated on activities performed by the defendant which were encompassed within the enumerated construction activities of section 13—214(a). *Blinderman,* 325 Ill. App. 3d at 370, 757 N.E.2d at 937. The court stated as follows:

"Under its plain language, the provisions of section 13—214(a) extend to acts or omissions in the supervision or management of construction. Thus, under these provisions, section 13—214(a) becomes applicable to actions for recovery of payments due under the contract for work engendered by the [defendant] in its capacity as supervisor and/or manager of construction." *Blinderman,* 325 Ill. App. 3d at 366-67, 757 N.E.2d at 935.

■ In the instant case, unlike *Lombard* and *Blinderman,* defendants are not "being sued for an act or omission of one of the specified construction related activities." Although plaintiffs alleged that defendants' project plans and specifications were incomplete, and because of those "construction sequencing deficiencies, Paschen \*\*\* would incur substantial additional costs," Paschen alleged they performed additional work beyond that was "engendered by [Donohue] in its capacity as supervisor and/or manager of construction." Specifically, after enumerating the additional electrical work required "[b]ecause the [p]roject [p]lans and [s]pecifications were incomplete," in paragraph 40 the complaint states as follows:

"*In addition to the foregoing,* throughout the duration of the construction project, Paschen \*\*\* requested Modern \*\*\* to provide additional *necessary* labor, services, and material for the project, which \*\*\* were clearly beyond \*\*\* the subcontract." (Emphasis added.)

Further, paragraph 44 of count I in plaintiffs' second amended complaint states as follows:

"Throughout construction of the project, and *in addition to* the extra services Paschen and its subcontractors were required to provide as a result of the incomplete and unclear project plans and specifications and resequencing of the construction work \*\*\*, the City and Donohue ordered Paschen and/or its subcontractors to provide further services, labor and material to the project over and above the services, labor, and material Paschen was required to provide pursuant to the general contract." (Emphasis added.)

Count I of Paschen's complaint alleges defendants breached their contract by wrongfully failing to pay the requested additional compensation as provided in the general contract. Accordingly, this claim is an action on a written contract and section 13—206 of the Code controls that portion of the second amended complaint related to

additional work beyond that "engendered by [Donohue] in its capacity as supervisor and/or manager of construction."

Turning to the remainder of the complaint, Paschen is not barred by the four-year limitations period in section 13—214. A limitations period begins when facts exist that authorize one party to maintain an action against another. *Kozasa v. Guardian Electric Manufacturing Co.*, 99 Ill. App. 3d 669, 673, 425 N.E.2d 1137, 1141 (1981); see also *Brehm v. Sargent & Lundy*, 66 Ill. App. 3d 472, 384 N.E.2d 55 (1978) (the statute of limitations began to run when the plaintiff first had the power to assert the legal claim). Paschen demanded additional compensation for the extra work between July 1986 and November 1987. If defendants had paid for the additional work caused by the planning deficiencies, plaintiffs would not have had a cause of action. On February 14, 1989, Paschen received written notification that its request for additional compensation was denied. Paschen filed the original complaint three years later, on February 14, 1992, before the applicable statute of limitation had expired. Accordingly, we hold that the trial court erred when it granted defendants' motion for summary judgment on count I of Paschen's second amended complaint.

## B. Paragraphs 35 through 43

■ Paschen argues the order striking paragraphs 35 through 43 was error because Paschen had the right to assert claims for all extras it provided "regardless of whether such costs were incurred or such services were performed personally or through a subcontractor." *United States v. Blair*, 321 U.S. 730, 737-38, 88 L. Ed. 2d 1039, 1045, 64 S. Ct. 820, 824 (1944). Paschen cites *Blair* for the proposition that, although "[c]learly the subcontractor could not recover [where] there was no express or implied contract between [it and Kankakee,] *** it does not follow that [Paschen] is barred from suing for this amount." See *Blair*, 321 U.S. at 737, 88 L. Ed. 2d at 1044-45, 64 S. Ct. at 824. Paschen further notes that it brought count I, not Modern.

We agree. Paschen argues defendants required Paschen to perform extra work beyond the terms of the contract. That Paschen subsequently engaged Modern to perform some of that work is irrelevant. Paschen has the right to recover. See *Blair*, 321 U.S. at 738, 88 L. Ed. 2d at 1045, 64 S. Ct. at 824 ("[the general contractor's] contract *** is thus sufficient to sustain an action for extra costs wrongfully demanded under [the] contract"). Kankakee argues *Blair* should not be followed because, here, it "has the effect of ignoring the plain language of the general contract providing that [Kankakee] is under no obligation to 'pay or see to the payment of any moneys due any [s]ubcontractor.'" *Blair*, however, is not offensive to the language of

the parties' contract, because its application would not require Kankakee to "see to the payment" of Modern. *Blair* stands only for the proposition that a general contractor can sustain a cause of action for work done under a contract when it solicits a subcontractor to actually perform the work. The trial court erred when it struck paragraphs 35 through 43 of count I.

## C. Paschen's Third Amended Complaint

Paschen contends that the trial court abused its discretion in denying it leave to amend its complaint. In response, defendants contend that the trial court properly denied leave to amend the complaint because the motion was untimely. Section 2—616 of the Code provides, in pertinent part:

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim.
>
> ***
>
> (c) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." 735 ILCS 5/2—616(a), (c) (West 2000).

■ Our supreme court set out four factors that a trial court should examine in determining whether a party should be granted leave to file an amended complaint. They are: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16. The most important of the *Loyola* factors is the prejudice to the opposing party, and substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant. *Miller v. Pinnacle Door Co.*, 301 Ill. App. 3d 257, 261, 703 N.E.2d 628, 631 (1998). "Prejudice may be shown where delay before seeking an amendment leaves a party unprepared to respond to a new theory at trial." *Miller*, 301 Ill. App. 3d at 261, 703 N.E.2d at 631.

■ Paschen's third amended complaint sought to amend count I and add a second count styled "Alternative Claim By Paschen On

Behalf of Modern Electric." Paschen argues the amendment to count I was "intended to and did, in fact, clarify that Paschen was seeking damages for all extras in its name and not in the name of or for the benefit of any subcontractor." In count II, Paschen stated count II was brought "by Paschen on behalf of *** Modern *** pursuant to a 'pass through' and/or 'liquidating' agreement entered into between Paschen and Modern Electric." Under their agreement Paschen is to bring the claim against Kankakee, Paschen admits the work was actually performed by Modern and Paschen is liable to Modern for the work, and any recovery by Paschen for the work will be paid to Modern.

As a result of this court's ruling, further proceedings will be required on, *inter alia*, the matters at the heart of Paschen's proposed amendments, *i.e.*, recovery for extras where the work was actually performed by the subcontractor. Paschen's claim for these extras has always been known to Kankakee. Therefore, this court finds Kankakee will not be prejudiced by Paschen's proposed amendments. However, based on this court's reversal of the trial court's striking of paragraphs 35 through 43, Paschen is not required to allege, as it does in its proposed count II, that the work was actually performed by Modern and that any sums recovered will be turned over to Modern. As previously noted, Paschen may maintain a cause of action in its own name for work required of it by Kankakee under the contract between them, and the fact that Paschen then contracted with another (Modern) to actually perform the work for Paschen is not a bar to Paschen's cause of action. Accordingly, the trial court's order denying Paschen's motion for leave to file a third amended complaint is reversed as to count I of the proposed third amended complaint.

## CONCLUSION

For these reasons, we reverse the court's order granting defendants summary judgment, reverse the trial court's order striking paragraphs 35 through 43 of count I, reverse the trial court's order denying Paschen leave to file a third amended complaint as to count I, and remand for further proceedings consistent with this order.

Reversed and remanded.

BARRY and LYTTON, JJ., concur.